IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

United States of America

    v.                    Case No. 2:08-cr-81-5

Ronald E. Kelsor

ORDER

    This matter is before the court on the defendant's motion to withdraw his guilty pleas to Counts 1, 36 and 37 of the superseding indictment entered on December 1, 2008. The court held an evidentiary hearing on defendant's motion on January 5, 2009. The government has since filed a motion for leave to file a supplemental response to defendant's motion. The motion for leave to file is granted. After the hearing, the court appointed new counsel to represent the defendant and to consult with him regarding whether he wished to continue to pursue his motion to withdraw his guilty pleas. On April 30, 2009, defendant filed a notice of his intent to pursue the withdrawal of his guilty pleas.

    Under Fed.R.Crim.P. 11(d), a defendant may withdraw a plea of guilty: (1) before the court accepts the plea, for any reason or no reason; or (2) after the court accepts the plea, but before it imposes sentence if the defendant can show a fair and just reason for requesting the withdrawal. Fed.R.Crim.P. 11(d)(1) and (2)(B).

    In regard to whether the "before acceptance" or "after acceptance" standard should be applied in this case, the transcript of the change of plea proceedings held on December 1, 2008, reveals that this court did not expressly accept defendant's guilty plea in exact words at the change of plea hearing. This court intended to and did accept the defendant's guilty plea at the conclusion of the

plea colloquy, and the failure to expressly state that acceptance on the record was an inadvertent oversight.

Although the Sixth Circuit has not yet addressed the question of whether an express acceptance of the guilty plea on the record is required, the Fourth Circuit has held that no specific words are required to signal the acceptance of a guilty plea under Rule 11, and that once the Rule 11 colloquy is completed, a presumption arises that the court has accepted the defendant's guilty plea. See United States v. Battle, 499 F.3d 315, 321-322 (4th Cir. 2007); see also United States v. Head, 340 F.3d 628, 630-31 (8th Cir. 2003)(analyzing record to determine if district court expressly or implicitly accepted defendant's plea).

The record in this case indicates that the Rule 11 colloquy was completed, and that the court made the findings required under Rule 11. Assuming arguendo that no exact language is required for the acceptance of a guilty plea, there is a sufficient record to indicate that this court at least implicitly accepted defendant's guilty plea, warranting the application of the "fair and just reason" standard to the defendant's motion.

Under Rule 11(d)(2)(B), the defendant bears the burden of showing a "fair and just reason" for withdrawal of the plea. United States v. Ellis, 470 F.3d 275, 280 (6th Cir. 2006). The purpose of Rule 11(d) is "to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty." Id. at 280-81. Withdrawal of the plea is appropriate where there is a showing of "real confusion or misunderstanding of the terms of the agreement." Id. at 281.

In <u>United States v. Bashara</u>, 27 F.3d 1174, 1181 (6th Cir. 1994), the court articulated seven factors to be considered in determining whether the defendant offers a "fair and just reason." These factors include:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) the potential prejudice to the government if the motion to withdraw is granted.

<u>Id.</u>; <u>Ellis</u>, 470 F.3d at 281. These factors are a "general, non-exclusive list and not one factor is controlling." <u>United States v. Bazzi</u>, 94 F.3d 1025, 1027 (6th Cir. 1096).

Guilty pleas must be "knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." <u>Brady v. United States</u>, 379 U.S. 742, 748 (1970). In determining whether a plea was knowingly and intelligently entered, the totality of the circumstances must be considered. <u>Garcia v. Johnson</u>, 991 F.2d 324, 327 (6th Cir. 1993).

The first two factors weigh in the defendant's favor. The defendant entered his guilty plea on December 1, 2008, and the motion to withdraw the guilty plea was filed on December 14, 2008. Defendant testified at the hearing on the motion that he had second thoughts about his guilty plea upon returning to the jail after the change of plea proceedings.

In regard to the third factor, the court heard testimony that defendant has not always asserted his innocence concerning at least some of the charges in the indictment. However, with the exception

3

of the brief period of time surrounding the change of plea hearing, he steadfastly asserted his desire to proceed to trial.

As to the circumstances surrounding the entry of the guilty plea, the record reveals that defendant rejected the first plea agreement tendered by the government concerning the charges in the original indictment. This plea agreement, Attachment A to the government's response (Doc. No. 585), provided that defendant would plead guilty to Count 1, a conspiracy to distribute and to possess with the intent to distribute more than 1,000 grams of heroin from February 2008 through May 6, 2008. This charge carried a mandatory minimum penalty of twenty years up to life imprisonment. This proposed agreement also contained a stipulation by the parties, not binding on the court, that defendant's guideline sentence would be calculated from a base offense level 32, with a two-level enhancement for possession of a dangerous weapon. With a three-level decrease for acceptance of responsibility, this would have resulted in a total offense level of 31. The agreement noted that the parties were unsure whether defendant would be classified as a career offender, which might have an impact on his sentencing range under the advisory Guidelines.

Subsequently, a superseding indictment was returned, which charged defendant with additional offenses. The conspiracy charge in Count 1 was broadened to encompass the time period from 2004 through April of 2008. On November 6, 2008, counsel for the government, the case agent, and defense counsel met with defendant to discuss a second plea agreement proposed by the government. Under this proposed agreement, the defendant would be required to plead guilty to the conspiracy in Count 1 of the superseding indictment, and to further agree to the forfeiture of cash and

4

property described in Counts 36 and 37 of the superseding indictment. This plea agreement also contained a stipulation, not binding on the court, that defendant's guideline range would be calculated using a base offense level 34, with two-level upward adjustments for possession of a dangerous weapon and an aggravated role in the offense. Assuming a three-level decrease for acceptance of responsibility, this would have resulted in a total offense level of 35.

Defendant rejected this proposed agreement. Shortly before the trial date of December 1, 2008, defendant asked his attorney if the trial could be continued to permit him to review the discovery with his counsel. However, on November 28, 2008, defendant notified his attorney that he was willing to plead guilty, and his attorney then notified counsel for the government. According to the testimony of the case agent, defendant signed both the original plea agreement and the second plea agreement offered by the government.[1] According to Deputy Mike Justice, the case agent, defense counsel obtained defendant's signature on both agreements with the hope that the government might be persuaded to permit defendant to proceed with the original plea agreement, which the government declined to do.

On December 1, 2008, the defendant appeared in court with counsel and participated in a plea colloquy whereby he entered guilty pleas in accordance with the second plea agreement. During the plea colloquy, the defendant acknowledged that he understood the elements of the counts to which he was pleading guilty and the

---

[1]The government argued in its supplemental motion that only the second plea agreement was signed by the defendant, but offered no evidence to support that assertion.

potential penalties.  The plea agreement was read into the record, and the defendant acknowledged that he understood the terms of his plea agreement.  The case agent then read a statement of facts, and the defendant agreed that the statement of facts was true and correct, and that he was guilty of the offenses to which he was pleading guilty.

Defendant testified at the motion hearing that he was confused at the time of the change of plea.  He indicated that he is diabetic, and that he was not feeling well during the change of plea hearing, that his sugar level was low, and that he was sweating and mentally confused.[2]  He testified that he did not report this to anyone because the hearing went so quickly (the hearing lasted approximately twenty to twenty-five minutes).

Defendant further testified that he was confused regarding the differences between the original indictment and the superseding indictment.  He stated that he did not recall the plea discussions concerning the superseding indictment.  He stated that he thought that he was pleading guilty to the charge in the original indictment, with the stipulated base offense level of 32, and a sentence of twenty years, which could possibly be reduced to seventeen years with good time credit. Defendant testified that he was under the impression that the government was representing that he would receive at most a sentence of no more than twenty years incarceration, not a sentence of twenty years to life, and that the firearm charges and the forfeiture counts would be dropped.  He stated that he was unaware of the two-level enhancement for a

---

[2]The fact that defendant was sweating was confirmed by Deputy Justice, although he further testified that in other respects, defendant's appearance was consistent with his appearance during previous meetings with the agent.

dangerous weapon. Defendant also testified that he did not have an opportunity before the change of plea hearing to review the government's statement of facts with his counsel. Defendant further testified that he responded affirmatively to the court's questions during the plea colloquy because he was not feeling well and was confused, because the hearing went so quickly, and because he was hoping the charges in the superseding indictment would be dropped as the government allegedly promised.

In regard to the defendant's nature and background, the record reveals that the defendant is fifty-four years old, has a GED, and has completed various technical courses while incarcerated. Defendant has an extensive criminal record with previous convictions in state courts, including convictions following guilty pleas. However, this is his first federal case.

In regard to the potential prejudice to the government if the motion is granted, the government would obviously be put to the time and expense of a trial. However, there is nothing in the record to indicate that the government's witnesses are now unavailable, or that the government would suffer any other prejudice.

The defendant's testimony suggests that defendant's guilty plea was "a hastily entered plea made with unsure heart and confused mind[.]" Ellis, 470 F.3d at 280. Despite the plea colloquy and defendant's affirmative responses to the court's questions, the court is concerned about defendant's claim that he was suffering from low blood sugar as a result of his diabetes at the time of the hearing, resulting in "real confusion or misunderstanding of the terms of the agreement." Id. at 281. This was compounded by the fact that defendant claims that he did not

7

have time to review the statement of facts or to confer with counsel immediately prior to the change of plea hearing.

Defendant's claim of confusion is further supported by the fact that two indictments were returned in his case, resulting in different plea discussions. The testimony that defendant signed both the original plea agreement and the plea agreement relevant to the superseding indictment also suggests that defendant may have been confused about the nature of the charges to which he was pleading guilty. Defendant's testimony that he thought that the "firearm specification" was going to be dismissed indicates that defendant did not fully understand the distinction between the firearm offenses charged in the superseding indictment which were to be dismissed, the firearm forfeiture count to which he pleaded guilty, and the two-level enhancement for possession of a dangerous weapon which would apply in the calculation of his guideline sentencing range. Defendant's testimony also indicates that he was confused about the difference between the mandatory minimum sentence of twenty years and the role of the sentencing range under the advisory guidelines. It is also not clear that defendant fully understood that he was pleading guilty to a conspiracy offense with a higher guideline sentencing range.[3]

Considering all of the relevant factors, the court concludes that defendant's testimony raises sufficient questions about his

---

[3]The court rejects the defendant's testimony that the government lied to him about the nature of the charges to which he pleaded guilty and that the government promised him that he would serve no more than twenty years. The record shows that counsel for the government and for the defendant met with defendant on November 6, 2008, and made reasonable efforts to explain the terms of the proposed plea agreement. Although defendant was confused about the plea offer over three weeks later when he entered his guilty plea, he has not shown that the government misrepresented the nature of the proposed plea agreement in any way.

understanding of the nature of the charges and the effect of his guilty plea to satisfy the "fair and just" standard.  Defendant's motion to withdraw his guilty pleas is granted, and his case will be set for trial.  The court will conduct a scheduling conference on May 1, 2009, at 9:00 a.m. in Courtroom Number 3.

Date: April 30, 2009             <u>     s/James L. Graham     </u>
                                 James L. Graham
                                 United States District Judge