IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RONALD KELSOR,

        Petitioner,

        v.

UNITED STATES OF AMERICA,

        Respondent.

Case No. 2:12-CV-01212
Crim. No. 2:08-CR-81(5)
Judge Graham
Magistrate Judge King

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. *Motion to Vacate,* ECF 913. This matter is before the Court on the *Motion to Vacate*, Respondent's *Response*, ECF 957, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

I.    **Facts and Procedural Background**

   A.    **The Underlying Convictions**

Petitioner was charged with 22 counts relating to drug trafficking and guns. *Second Superseding Indictment,* ECF 738. The United States Court of Appeals for the Sixth Circuit summarized the facts of these underlying criminal charges as follows:

> Defendant Ronald Kelsor came to the attention of law enforcement in 2007, when he was observed selling heroin to several individuals during a drug investigation in Union County, Ohio. Further investigation — including controlled purchases, surveillance, and use of a "pen register" for a cell phone number belonging to defendant — led to court-authorized wiretaps on defendant's phone and later for the phones of two others. Defendant's calls were monitored between February and April 2008, and surveillance during that time

corroborated that the phone was being used to arrange the purchase and sale of heroin.

Cooperating witnesses provided testimony at trial concerning the existence, scope, and operation of the conspiracy to distribute or to possess with intent to distribute more than 1,000 grams of heroin in the Columbus area from 2004 until 2008 (count 1). The monitored calls provided the basis for the multiple counts of using a telephone to facilitate the charged conspiracy (counts 4-18). Defendant's substantive drug and firearm convictions arose from the seizure of heroin and firearms from two locations during the execution of search warrants on April 21, 2008 (counts 2-3, 19-22).

There was testimony that, prior to 2006, defendant lived with coconspirators Ernestine Bankston and Victor Woodson in the Clifton Apartments in Columbus, Ohio. There, defendant, Bankston, Woodson, and others prepared and packaged heroin for delivery to roughly twenty customers per day. Defendant moved to 703 1/2 Kossuth Street in Columbus, Ohio, where he lived with Bankston, Woodson, and Elisha Collins. Defendant, Bankston, Woodson, Collins, and Billy Lee prepared and distributed heroin on a daily basis working at a black card table in the living room of the Kossuth Street residence. On the card table would be heroin, a grinder, bags, pen and paper to take phone orders, and firearms. In October 2007, wanting to be away from the heroin operation at night, defendant and Bankston began living at 1722 South Hamilton Road in Columbus. Woodson continued to live at the Kossuth address, where heroin was prepared and distributed on a daily basis. Defendant met one of his suppliers at the Hamilton Road address, and kept drugs, money, and a firearm in the bedroom he shared with Bankston.

Defendant had several sources, including David McReynolds who delivered up to 50 grams of heroin on more than 30 occasions, and Edmund Plunk who delivered, or directed that Mandell Cantrell deliver, between 20 and 60 grams on more than 50 occasions. The heroin prepared by defendant and his coconspirators was sold to customers who both used and resold the heroin to others. Those customers included Mitchell Wood, Paul Coon, Mark Dowdy, Charles Carmichael, Keith Herdman, Andrea

Herdman, Kristine Dixon, and Karessa Dixon. Carmichael testified that he purchased heroin from the defendant between 2004 and 2008; usually purchased between two and five bundles of ten bags each (or two to five grams) of heroin; and, by the end of that period, was calling to arrange a purchase every day or every other day.

Mitchell Wood traveled from Athens County, Ohio, to purchase heroin from the defendant on almost a daily basis between May 2007 and April 2008. Wood testified that he purchased heroin in quantities ranging from three to twenty-eight bundles, and estimated that he obtained a total of more than 1,000 grams of heroin from the defendant. Wood explained that he sometimes brought others with him to purchase heroin and that, when he did, they would pool their money and have only one person conduct the transaction.

Multiple search warrants were executed on April 21, 2008, including at both the Kossuth Street and Hamilton Road residences. Defendant was arrested at the Kossuth address, where 16 grams of heroin, a scale, packaging materials, and two firearms were also found. Specifically, agents seized a Rexio revolver that was on the bed and a Hi Point .380 semiautomatic pistol from the living room closet. At 1722 South Hamilton Road, a Bersa Thunder .380 handgun was found in the bed located in the bedroom that defendant shared with Bankston. In that bedroom, agents also found $7,040 in cash and a safe containing 60 grams of heroin, bottles of pills, and documents. A separate search warrant executed at a residence known to be used by Plunk resulted in the seizure of more than 1,300 grams of heroin.

Although twenty-five defendants were charged in the original indictment, defendant was the only person charged in the second superseding indictment filed shortly before trial.FN1 At the conclusion of a five-day trial, the jury found defendant guilty on all counts. The government had filed an information pursuant to 21 U.S.C. § 851 identifying a number of prior convictions as the basis for statutorily enhanced penalties.

FN1. Defendant had entered a guilty plea, which he successfully moved to withdraw.

> Based on a finding that defendant had two or more
> prior felony drug convictions, the district court
> imposed a mandatory term of life imprisonment for
> the conspiracy conviction pursuant to 21 U.S.C. §
> 841(b)(1)(A) (count 1). Along with that life
> sentence, the court imposed concurrent sentences
> of: 360 months in prison on each of two counts of
> possession with intent to distribute heroin
> (counts 2-3); 120 months in prison on each of two
> counts of being a felon in possession of a
> firearm (counts 21-22); and 48 months in prison
> on each of fifteen counts of using a telephone to
> facilitate the charged conspiracy (counts 4-18).
> See 21 U.S.C. §§ 841(a)(1) and 843; 18 U.S.C. §
> 922(g)(1). In addition, the court imposed
> mandatory consecutive sentences of 60 months for
> the first § 924(c) conviction, and 300 months for
> the second § 924(c) conviction (counts 19-20).
> See 18 U.S.C. § 924(c)(1)(C) and (c)(1)(D)(ii). .
> . .

*United States v. Kelsor*, 665 F.3d 684, 690-93 (6ᵗʰ Cir. 2011). *See Judgment*, ECF 816.

Petitioner timely appealed his convictions and sentence to the United States Court of Appeals for the Sixth Circuit, arguing that the evidence was constitutionally insufficient to sustain his conviction on the § 924(c) counts; that he was denied a fair trial because the District Court improperly admitted coconspirator statements under Fed.R.Evid. 801(d)(2)(E); that evidence of recorded calls to which the witness was not a party was improperly admitted at trial; and that the District Court failed to give a requested jury instruction on multiple conspiracies. Petitioner also asserted that the government's notice of intent to seek enhanced penalties was defective, that the District Court erroneously imposed consecutive sentences on the § 924(c) convictions, and that his life sentence violated the Double Jeopardy Clause and constituted cruel and unusual punishment. On December 20,

2011, the United States Court of Appeals for the Sixth Circuit affirmed Petitioner's convictions and sentence. *Kelsor*, 665 F.3d at 684.[1]

B.   **The Current Proceedings**

Petitioner filed the *Motion to Vacate* on December 26, 2012, alleging that he was denied the effective assistance of counsel at all stages of the proceedings and was denied a fair trial. *Motion to Vacate.* First, Petitioner claims that he was denied the effective assistance of counsel during plea negotiations because his court-appointed lawyers failed to pursue a more favorable "capped" plea agreement and failed to consult with Petitioner or to explain the terms of a plea offer extended by the government. *Id.* at PageID #5551, #5562. Second, Petitioner claims that he was denied the effective assistance of counsel because his attorneys failed to move to suppress wiretap evidence and failed to effectively cross examine the government's witness regarding the government's application for the wiretap. *Id.* at PageID# 5552, #5567-68. Third, Petitioner claims that he was denied the effective assistance of counsel during the pre-trial and sentencing stages of the proceedings because counsel improperly stipulated to "misapplied priors," "erroneous evidence," and "[l]ife sentence." *Id.* at PageID #5554, #5562. Petitioner also alleges that he was denied a fair trial because the government and case agents were biased against him, discriminated against him on the basis of race, and committed misconduct. *Id.* at PageID #5555.

---

[1] Petitioner indicates that, on December 21, 2011, the United States Supreme Court denied his petition for a writ of *certiorari*. *Motion to Vacate*, PageID #5561.

Petitioner submitted his affidavit in support of these allegations. *See Affidavit of Counsel's Conduct*, PageID #5565-66.

## II.  Ineffective Assistance of Counsel Claims

Petitioner alleges that he was denied the effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that counsel's performance was deficient, or that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed" by the Sixth Amendment, and that this deficient performance prejudiced the petitioner. *Id*. at 687. This showing requires that defense counsel's errors were so serious as to deprive the defendant of a fair and reliable trial. *Id*.

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 599 U.S. 356, 371 (2010). Given the difficulties inherent in determining whether an attorney's performance was constitutionally deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . ."  *Strickland,* 466 U.S. at 689. Nevertheless, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. A petitioner, therefore, must show prejudice in order to prevail on a claim of ineffective assistance of counsel. *Id*. at 692.

In order to establish prejudice, a petitioner must demonstrate that a reasonable probability exists that, but for counsel's errors,

the result of the proceedings would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Because a petitioner must satisfy both prongs of *Strickland* to demonstrate ineffective assistance of counsel, should a court determine that the petitioner has failed to satisfy one prong, it need not consider the other. *Id.* at 697.

Attorney Frederick Benton, the second of Petitioner's court-appointed counsel, responded to Petitioner's allegations in relevant part as follows:

> I was appointed to represent Ronald Kelsor on January 9, 2009. My representation included both his trial and later appeal. By the time of my appearance as Mr. Kelsor's counsel, he had filed a motion to withdraw his previously entered plea. *First Motion to Withdraw Plea of Guilty* (Doc. 567). Following an evidentiary hearing involving his former counsel, the Court gave Mr. Kelsor an opportunity to consult with the affiant regarding whether he desired to continue with his motion to withdraw his plea.
>
> **Claimed Failure to Pursue Plea Agreement**
>
> On January 22, 2009, I spoke with AUSA Don Pashayan regarding a potential plea relating to claims asserted prior to the first Superseding Indictment (Doc. 445). Mr. Pashayan was adamant that the only plea the Government would offer would be to the *Superseding Indictment*. His reasons were as follows. First, Mr. Kelsor's affidavit in support of his motion to withdraw his plea asserted claims that compromised any chance for a 5K1 motion.FN1. Second, Mr. Kelsor's delay necessitated the Government's filing of the Superseding Indictment, thereby limiting options for any other consideration.
>
> FN1: The affidavit was drafted by Mr. Kelsor's former counsel.
>
> I met with Mr. Kelsor on April 27, 2009 to discuss his desire to withdraw his plea.FN2.

Mr. Kelsor believed Mr. Pashayan treated him unfairly, and that his prior counsel did not properly represent him. After considerable discussions, it was clear Mr. Kelsor would remain resolute in his desire to withdraw his plea. *Defendant's Notice of Intent to Pursue Withdrawal of Plea* was filed on April 30, 2009 (Doc 668). His principal objection was regarding the amount of time he risked from his plea. I advised him that while I understood his concern, the evidence, his role in the conspiracy and statements from his co-conspirators did not provide any leverage for him to negotiate a lesser sentence. We also reviewed the applicable Sentencing Guidelines and statutory penalties associated with his case. He was willing to plea to a sentence of 10 to 12 years. As a last resort, he expressed a willingness to accept a plea of 20 to life. I advised Mr. Kelsor that it was very unlikely the Government would accept this proposal. Nonetheless, both offers were communicated to and summarily rejected by Mr. Pashayan.

FN2: It should be noted that the Court needed to resolve a potential conflict issue before counsel was able to proceed. Therefore, counsel's initial engagement was limited until this issue was resolved. Nonetheless, the Court extended the plea deadline to April 30, 2009 for Mr. Kelsor to decide if he wanted to pursue his motion. Mr. Kelsor was not prejudiced by this delay.

One of Mr. Kelsor's difficulties was in failing to accept the fact that the federal proceedings were significantly different from his previous experiences in state courts. I emphasized that he was not in a position to give "a number" to the Government that he believed to be reasonable. I also told him I could not change the events that occurred prior to my involvement. Mr. Kelsor still wanted to withdraw his plea agreement although I strongly advised him against this.

Also during this time, as well as other times, plea negotiations continued to be pursued. However, neither party was willing to accept the other party's terms. On June 11, 2009, I provided Mr. Kelsor a proposed plea agreement, along with a copy of an email I received from

AUSA Don Pashayan who expressed the time sensitive nature of this proposed resolution. The potential sentence under this proposal included a minimum mandatory sentence of 20 years to life.FN3. Admittedly, the potential penalties were stiff. Nonetheless, he had an opportunity to avoid a mandatory life sentence by limiting his relevant conduct, dismissing the 924(c) counts, and provide a three level reduction for acceptance of responsibility. Mr. Kelsor said no.

FN3: This was an option Mr. Kelsor previously said he would consider.

Mr. Kelsor later offered to provide information as to another crime to improve his negotiation posture. That information was communicated to Mr. Pashayan on July 16, 2009. On July 17, 2009, the Government responded expressing their interest and the terms of the proffer. Mr. Kelsor later declined because no guarantees were provided as to what sentence he would receive in exchange for his information.

All of my discussions between the Government and Mr. Kelsor were shared on a timely basis. Mr. Kelsor suffers from the classic "buyer's remorse". His claim that I refused to negotiate a plea agreement or that I failed to advise the Government of his interest in pursuing a plea is blatantly false. I had nothing to gain by refusing to negotiate a resolution. Mr. Kelsor was always made aware that any decision to proceed to trial or accept a plea was his to make.

It should be noted that in a letter addressed to Judge Graham, *Kelsor Letter* (Doc. 807), Mr. Kelsor made the following statement:

> I just couldn't see myself accepting a plea agreement of 20 to Life, not at the age that i (sic) am, and also considering the bad health that I'm in. i (sic) will be lucky if i (sic) lived another 5 yrs. (sic).

*Kelsor Letter* filed January 4, 2010 (Doc. 807).

His own letter contradicts the claim that I ignored his request to pursue plea negotiations.

His assertion that I said "we should focus on preparing for trial" rather than negotiate a plea is obviously false. *Kelsor Motion to Vacate Conviction – Affidavit of Counsel's Conduct* page 1. (Doc. 913).

\* \* \*

## Failure to Challenge Validity and Accuracy of Wiretap Application

A Motion to Suppress Wiretap (Doc. 324) was filed on Mr. Kelsor's behalf by his former counsel. That motion was denied on August 4, 2008. (Order Denying Motion to Suppress Doc. 364).

## Failure to Adequately Cross Examine Agent [Bakr]

Mr. Kelsor's claim [that I failed adequately to cross examine Agent Bakr] is unfounded. To the extent her testimony was corrected by subsequent questions from AUSA Pashayan, no error occurred.FN4.

FN4. Counsel does not concede any error.

This occurred during trial. This was not a suppression hearing. Judge Graham previously ruled that the wiretap was properly conducted. Furthermore, Mr. Kelsor incorrectly states that his appeal on this issue was subject to a more stringent standard of review based upon counsel's perceived error. This is incorrect. That issue was not raised on appeal. Agent [Bakr's] testimony was challenged on appeal only as to rendering an opinion regarding the identification of voices from recorded telephone calls, and the meaning of certain terms. *U.S. v. Kelsor*, 11a0317 p. 15 (6th Cir. Dec. 20, 2011).

\* \* \*

## Failure to Properly Challenge Prior Convictions

. . . Mr. Kelsor's prior convictions were challenged at trial and appeal. In addition, challenges were asserted to the *Government's Information to Establish Prior Convictions* (Doc. 743). *See Defendant Ronald Kelsor's Response to Government's Information to Establish Prior Convictions* (Doc. 800).

There was later a stipulation of his prior convictions, for sentencing purposes. *Notice of Stipulation* (Doc. 819). Mr. Kelsor not only agreed with this stipulation, he also affirmed it in writing and in open court.

*Affidavit of Frederick D. Benson, Jr. , Exhibit 1* to *Response.*

## A. Ineffective Assistance During Plea Negotiations

Petitioner avers in his affidavit in support of the *Motion to Vacate* that, in June 2008, Attorney Eric Hoffman – Petitioner's first court-appointed counsel - gave Petitioner a plea agreement without explaining its terms to Petitioner. *Affidavit of Counsel's Conduct*, PageID #5565. According to Petitioner, Attorney Hoffman later advised Petitioner that the plea agreement contemplated "a maximum time limit of twenty (20) years." *Id.* Petitioner agreed to those terms "on the belief that I could only be sentenced to twenty years" and that "once [he] learned that Attorney Hoffman misrepresented the terms of the plea agreement, I withdrew said plea." *Id.* Petitioner goes on to aver that Attorney Benton "ignored my request to seek a plea agreement. . . ." *Id.* Petitioner claims that his attorneys' performance was constitutionally unreasonable during plea negotiations because neither attorney attempted to secure a plea offer more favorable than the one that Petitioner initially accepted and later withdrew (which he terms a "capped" plea).[2] *Motion to Vacate,* PageID #5562-63. Petitioner asserts that nothing in the record indicates that the government would not have agreed to a "capped" plea. *Id.* at

---

[2] The Court understands that, by this claim, Petitioner contends that his counsel should have secured a plea agreement that required a determinate sentence, presumably either the mandatory minimum term of imprisonment required by 21 U.S.C. § 841 or a lesser sentence.

PageID #5562. Petitioner insists that he would have accepted such a plea offer. *Id*. at PageID #5563. Petitioner also argues that, in addition to failing to secure a more favorable plea offer, Attorney Hoffman failed to consult with Petitioner about the terms of the plea agreement, and that Attorney Benton failed to investigate Petitioner's sentence exposure and, presumably, explain that sentence exposure to Petitioner. *Id.* at PageID #5562-65.

## 1. Legal Standard

A criminal defendant is entitled to the effective assistance of counsel during the plea negotiation process. *Lafler v. Cooper*, --- U.S. ----, 132 S.Ct. 1376, 1384 (2012).

> Having to stand trial, not choosing to waive it, is the prejudice alleged. In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id*. at 1385. The United States Court of Appeals for the Sixth Circuit has described the obligations of defense counsel as it relates to advice during the plea negotiations stage:

> A criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available. In a system dominated by sentencing guidelines, we do not see how sentence

> exposure can be fully explained without completely exploring the ranges of penalties under likely guideline scoring scenarios, given the information available to the defendant and his lawyer at the time.

*Smith v. United States,* 348 F.3d 545, 553 (6th Cir. 2003) (citing *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992)).

> Supporting this duty is the concomitant obligation of conducting "reasonable investigations or [reaching] a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "Counsel cannot responsibly advise a client about the merits of different courses of action, [and] the client cannot make informed decisions, ... unless counsel has first conducted a thorough investigation...." *Dickerson v. Bagley*, 453 F.3d 690, 694 (6th Cir. 2006) (noting that such an investigation "should begin as quickly as possible" in order to aid in plea negotiations (internal quotation marks omitted)). The Sixth Amendment does not require that counsel provide an absolutely correct assessment of the comparative risks of a guilty plea versus a trial, but the Supreme Court has "recognize[d] that counsel must at least be aware of such risks, especially where the lack of awareness directly impacts the reasoning behind whatever advice is provided."

*Titlow v. Burt*, 680 F.3d 577, 587 (6th Cir. 2012) (citation omitted).

A substantial disparity between the terms of a plea offer and the potential sentence constitutes strong evidence that it is reasonably probable that a properly advised defendant would have accepted the plea offer. *Smith*, 348 F.3d at 552 (evidentiary hearing warranted as to whether defendant would have pleaded guilty where attorney failed to convey plea offer of five years and defendant sentenced to 156 months) (citing *Magana v. Hofbauer*, 263 F.3d 542, 552-53 (6th Cir. 2001) (difference between ten and twenty year sentence significant)).

An attorney's failure to insist that his client accept the government's plea offer does not, however, constitute constitutionally ineffective assistance.

> The decision to plead guilty — first, last, and always — rests with the defendant, not his lawyer. Although the attorney may provide an opinion on the strength of the government's case, the likelihood of a successful defense, and the wisdom of a chosen course of action, the ultimate decision of whether to go to trial must be made by the person who will bear the ultimate consequence of a conviction.

*Id.*

## 2. Discussion and Analysis

This Court has previously summarized the course of the plea negotiations in this case:

> [T]he record reveals that defendant rejected the first plea agreement tendered by the government concerning the charges in the original indictment. This plea agreement, Attachment A to the government's response (Doc. No. 585), provided that defendant would plead guilty to Count 1, a conspiracy to distribute and to possess with the intent to distribute more than 1,000 grams of heroin from February 2008 through May 6, 2008. This charge carried a mandatory minimum penalty of twenty years up to life imprisonment. This proposed agreement also contained a stipulation by the parties, not binding on the court, that defendant's guideline sentence would be calculated from a base offense level 32, with a two-level enhancement for possession of a dangerous weapon. With a three-level decrease for acceptance of responsibility, this would have resulted in a total offense level of 31. The agreement noted that the parties were unsure whether defendant would be classified as a career offender, which might have an impact on his sentencing range under the advisory Guidelines.

> Subsequently, a superseding indictment was returned, which charged defendant with additional offenses. The conspiracy charge in Count 1 was

broadened to encompass the time period from 2004 through April of 2008. On November 6, 2008, counsel for the government, the case agent, and defense counsel met with defendant to discuss a second plea agreement proposed by the government. Under this proposed agreement, the defendant would be required to plead guilty to the conspiracy in Count 1 of the superseding indictment, and to further agree to the forfeiture of cash and property described in Counts 36 and 37 of the superseding indictment. This plea agreement also contained a stipulation, not binding on the court, that defendant's guideline range would be calculated using a base offense level 34, with two-level upward adjustments for possession of a dangerous weapon and an aggravated role in the offense. Assuming a three-level decrease for acceptance of responsibility, this would have resulted in a total offense level of 35 [sic].

Defendant rejected this proposed agreement. Shortly before the trial date of December 1, 2008, defendant asked his attorney if the trial could be continued to permit him to review the discovery with his counsel. However, on November 28, 2008, defendant notified his attorney that he was willing to plead guilty, and his attorney then notified counsel for the government. According to the testimony of the case agent, defendant signed both the original plea agreement and the second plea agreement offered by the government.FN1 According to Deputy Mike Justice, the case agent, defense counsel obtained defendant's signature on both agreements with the hope that the government might be persuaded to permit defendant to proceed with the original plea agreement, which the government declined to do.

FN1. The government argued in its supplemental motion that only the second plea agreement was signed by the defendant, but offered no evidence to support that assertion.

On December 1, 2008, the defendant appeared in court with counsel and participated in a plea colloquy whereby he entered guilty pleas in accordance with the second plea agreement. . . .

Defendant testified at the motion hearing that he was confused at the time of the change of plea.

He indicated that he is diabetic, and that he was not feeling well during the change of plea hearing, that his sugar level was low, and that he was sweating and mentally confused.FN2 He testified that he did not report this to anyone because the hearing went so quickly (the hearing lasted approximately twenty to twenty-five minutes).

FN2. The fact that defendant was sweating was confirmed by Deputy Justice, although he further testified that in other respects, defendant's appearance was consistent with his appearance during previous meetings with the agent.

Defendant further testified that he was confused regarding the differences between the original indictment and the superseding indictment. He stated that he did not recall the plea discussions concerning the superseding indictment. He stated that he thought that he was pleading guilty to the charge in the original indictment, with the stipulated base offense level of 32, and a sentence of twenty years, which could possibly be reduced to seventeen years with good time credit. Defendant testified that he was under the impression that the government was representing that he would receive at most a sentence of no more than twenty years' incarceration, not a sentence of twenty years to life, and that the firearm charges and the forfeiture counts would be dropped. He stated that he was unaware of the two-level enhancement for a dangerous weapon. Defendant also testified that he did not have an opportunity before the change of plea hearing to review the government's statement of facts with his counsel. Defendant further testified that he responded affirmatively to the court's questions during the plea colloquy because he was not feeling well and was confused, because the hearing went so quickly, and because he was hoping the charges in the superseding indictment would be dropped as the government allegedly promised.

*Order,* ECF 670, PageID #3034-35.

The transcript of Petitioner's guilty plea hearing, *Transcript, Guilty Plea Proceedings*, ECF 612, reflects that Petitioner was advised that he faced a mandatory life sentence but that his sentencing

exposure would be reduced to a sentence ranging from twenty years to life under the terms of the second plea agreement:

> Originally, the United States had filed a notice under 851 which would have enhanced Mr. Kelsor's penalties to a minimum mandatory term of life imprisonment. Pursuant to the terms and conditions of the proposed plea agreement, I would intend, Your Honor, to file in open court an amended notice which would remove the mandatory minimum life imprisonment term and bring it down to a minimum mandatory term of 20 years imprisonment. That's pursuant to a plea agreement.

*Id.* at PageID #2697.[3]

> Basically, Mr. Kelsor would plead guilty to Count 1 of the *Superseding Indictment*, and he would be put on notice that he faces a minimum mandatory 20-year term of imprisonment up to life imprisonment. The amended notice, Your Honor, would remove or supersede the previous notice filed, which had previously put him on notice that he faced a mandatory term of life imprisonment. The amended notice puts him on notice that he faces a minimum mandatory term of 20 years imprisonment.

*Id.* at PageID #2698. Thus, the record establishes that Petitioner was advised that, absent a plea agreement, he faced a mandatory term of life imprisonment on just Count 1 of the *Superseding Indictment*. Moreover, the second plea agreement required that Petitioner admit his prior drug related felony convictions. *Id.* at PageID #2699. *See also Plea Agreement*, ECF 534, PageID #2196.

---

[3] The offense to which Petitioner would plead guilty pursuant to this plea agreement, *i.e.,* conspiracy to possess with the intent to distribute more than 1000 grams of heroin, required a ten year mandatory minimum term of imprisonment and authorized a possible life term of imprisonment. 21 U.S.C. §§ 841(b)(1)(A)(i), 846. Petitioner's prior felony convictions served to enhance the mandatory minimum term of imprisonment to twenty years. 21 U.S.C. § 841(b).

As noted *supra*, Petitioner pleaded guilty to Count 1 of the *Superseding Indictment* pursuant to the plea agreement. *Minute Entry* (December 1, 2008). During the plea colloquy, Petitioner indicated, in relevant part, that he understood the nature and meaning of the offense to which he was pleading guilty. *Transcript, Guilty Plea Proceedings* PageID #2702. He had told his attorney everything that Petitioner knew about the case and he believed that his attorney was fully informed of all the facts and circumstances on which the charge was based. *Id.* at PageID #2703. His attorney had fully advised Petitioner of the nature and meaning of the charge, as well as the applicable penalties and any possible defense that Petitioner might have to the charge. Petitioner was satisfied with his attorney's advice and representation. *Id.* The trial judge advised Petitioner of the elements of the offense. *Id.* at PageID #2303-04. Petitioner indicated that he understood that, in view of his prior felony convictions, he faced a mandatory minimum sentence of twenty years in prison up to a possible life term of imprisonment:

> COURT: And do you understand . . . that the government alleges that you were previously convicted of possession of heroin and having weapons under disability . . . . And the government alleges that a minimum mandatory term of 20 years in prison is triggered by this amended information and that, indeed, you would be subject to a minimum mandatory term of 20 years in prison and a possible term of life in prison if the government establishes that prior conviction.
>
> DEFENDANT: Yes, sir.

*Id.* at PageID #2704-05.

> COURT: Now, let me make sure that you understand the penalty for this offense, this conspiracy offense with the amended information. The penalty for that offense with the amended

> information. . . [is] a mandatory minimum term
> of 20 years in prison and up to a sentence of
> life imprisonment. . . . Do you understand that
> those are the penalties for this offense?
>
> DEFENDANT: Yes, sir.

*Id.* at PageID #2705-06.

> COURT: And do you understand that if the Court
> accepts your guilty plea and if you admit or the
> government proves that you were guilty of the
> previous offense, that the Court would have to
> impose the minimum mandatory term of 20 years in
> prison. Do you understand that?
>
> DEFENDANT: Yes, sir.
>
> COURT: And the Court could impose the maximum
> term of life imprisonment. . . . Do you
> understand that?
>
> DEFENDANT: Yes, sir.

*Id.*, at PageID #2706.

It is absolutely clear that the trial judge impressed on
Petitioner that he faced a mandatory minimum term of imprisonment of
twenty years if he pled guilty to Count 1 of the *Superseding
Indictment* pursuant to the plea agreement. Petitioner was also advised
during the plea colloquy that, absent the plea agreement, he faced a
mandatory minimum term of life in prison should he be convicted on the
conspiracy charge in Count 1. *Id.* at PageID #2697-98.

After having entered a guilty plea pursuant to the plea agreement,
Petitioner later withdrew that guilty plea. The government then filed
formal notice of its intent to establish Petitioner's prior violent and
felony drug convictions, which would serve to enhance Petitioner's
sentence upon conviction to a mandatory life term of imprisonment.
*Information to Establish Prior Convictions,* ECF 716.

Under these circumstances, Petitioner cannot establish that Attorney Hoffman rendered ineffective assistance of counsel by failing to secure a more favorable plea offer or by failing to consult with Petitioner about the terms of the plea offer. This Court's factual findings, made after the hearing on Petitioner's motion to withdraw his guilty plea, *Order*, ECF 670, establish that Petitioner rejected the first plea offer, which was tendered by the government prior to the filing of the *Superseding Indictment* and which also contemplated a sentence ranging from 20 years to life in prison. *Order*, at PageID 3034. *See Plea Agreement*, PageID #2471, attached to *United States' Amended Response in Opposition to Defendant's Motion to Withdraw Guilty Plea Pre Sentence*, ECF 585. After the government filed the *Superseding Indictment*, which broadened the conspiracy charge in Count 1 and added additional charges against Petitioner, Attorney Hoffman negotiated a second plea agreement and even "obtained defendant's signature on both agreements with the hope that the government might be persuaded to permit defendant to proceed with the original plea agreement, which the government declined to do." *Id*. at PageID #3035. There is absolutely no evidence in the record that either of Petitioner's attorneys could have secured a plea agreement that would have limited Petitioner's sentence to the mandatory minimum term of twenty years' imprisonment.

Moreover, Petitioner cannot establish prejudice from any alleged error in Attorney Hoffman's explanation of the terms of the second plea agreement.[4] The trial judge advised Petitioner, in excruciating detail

---

[4] As noted *supra*, Petitioner avers in his affidavit in support of the *Motion to Vacate* that he pled guilty only because Attorney Hoffman misrepresented to Petitioner that the "plea was for a maximum time limit of twenty (20) years."

during the guilty plea colloquy, of the elements of the offense charged and of the penalties that he faced – whether upon conviction at trial or pursuant to the plea agreement.

Similarly, Petitioner cannot establish prejudice from any alleged failure in the performance of Attorney Benton at the plea negotiation stage. As noted, the trial judge had already reviewed with Petitioner during the guilty plea colloquy the terms of the second plea agreement and the penalties that Petitioner faced, either pursuant to or absent the plea agreement. Petitioner, of course, withdrew his guilty plea entered pursuant to that plea agreement and there is simply no evidence in the record that any other plea offer could be expected. The fact that Petitioner chose to withdraw his guilty plea and was thereafter convicted at trial does not establish the ineffective assistance of counsel of either of his counsel in this regard.

### B. Wiretap Evidence

In claim two, Petitioner alleges that he was denied the effective assistance of counsel because his attorneys failed to challenge the validity and accuracy of the wiretap application and related testimony. *Motion to Vacate*, PageID #5568. Specifically, Petitioner asserts that evidence of his telephone conversations should have been suppressed based on the government's failure to properly obtain approval for the wiretap. Petitioner also contends that Attorney Benton was constitutionally ineffective because he failed to

---

*Affidavit of Counsel's Conduct*, PageID #5491. Petitioner averred that he withdrew his guilty plea "once [he] learned that Attorney Hoffman misrepresented the terms of the plea agreement." *Id*.

effectively cross-examine the witness who testified regarding the application for the wiretap. *Id*.

Petitioner's contentions are without merit. To begin, the record establishes that Attorney Hoffman filed a motion to suppress wiretap evidence, arguing that the wiretap applications failed to meet the "necessity" requirement under 18 U.S.C. 2518(1)(c). *Defendant Ronald Kelsor's Motion to Suppress Wiretap Evidence*, ECF 324. That motion was denied. *Opinion and Order*, ECF 364. Petitioner points to no errors in that determination.

Petitioner does argue, however, that DEA Agent LeAnn Bakr improperly obtained authorization for the wiretaps from the Office of Executive Operations ("OEA"), and complains that his attorney failed to challenge her contradictory testimony on this point at trial. *Motion to Vacate*, PageID #5567-68. Indeed, Attorney Benton did not challenge the wiretap evidence on the basis that the government had failed to obtain appropriate authorization; any such a challenge would have failed.

In relevant part, the Federal Electronic Surveillance Statutes ("Title III"), 18 U.S.C. §2510, *et seq.* provides:

> The Attorney General, Deputy Attorney General, Associate Attorney General, or any Assistant Attorney General, any acting Assistant Attorney General, or <u>any Deputy Assistant Attorney General</u> or acting Deputy Assistant Attorney General *in the Criminal Division* or National Security Division specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for, and such judge may grant in conformity with section 2518 of this chapter an order authorizing or approving the interception of wire or oral communications by the Federal Bureau of Investigation, or a Federal agency having

22

> responsibility for the investigation of the
> offense as to which the application is made, when
> such interception may provide or has provided
> evidence of . . . any offense involving . . . the
> manufacture, importation, receiving, concealment,
> buying, selling, or otherwise dealing in narcotic
> drugs, marihuana, or other dangerous drugs,
> punishable under any law of the United States[.]

18 U.S.C. § 2516(1)(e) (emphasis added). Thus, Title III explicitly
requires the United States Attorney General and designated deputies or
assistant attorneys general to authorize applications for wiretaps.

Agent Bakr testified that, prior to February 2008, the DEA had
used an authorized "pen register" that provided information about
phone numbers to and from Petitioner's telephone. *Trial Transcript,*
ECF 832, PageID #4196-97. Based on this and other information, Agent
Bakr drafted an affidavit in support of an application for a warrant
permitting the government to listen to Petitioner's telephone
conversations. *Id.* at PageID #4197-98. She testified to the process
followed in this regard. *Id.* at PageID #4198. Officials of the
United States Attorney's Office and the DEA reviewed the warrant
application, which was then sent to the Office of Enforcement
Operations ("OEO"), which finally authorized submission of the
application to the Court. *Id.* at PageID #4198. Agent Bakr
specifically testified that the review process entailed sending the
application through her office, to the United States Attorney's
Office, and then to "Main Justice," and that "Main Justice and
Washington D.C." gave final permission to present the affidavit and
the warrant application to the Court. *Id.* at PageID #4202.

Petitioner's contentions to the contrary notwithstanding, Agent
Bakr's testimony that she obtained authorization from OEO, or "Main

Justice" is not "contradictory." OEO is an office in the Criminal Division of the Department of Justice. *See Offices of the United States Attorneys, Criminal Resource Manual: Electronic Surveillance*, at 9-7.010, available at http://www.justice.gov/usao/eousa/foia_reading_room/usam/title9/7mcrm.htm. The OEO includes an Electronic Surveillance Unit that initially reviews warrant applications before they are finally reviewed and approved by Deputy Assistant Attorneys General for the Criminal Division of the Department of Justice. *Id*. at 9-7.100, 9-7.110. Title III explicitly provides that Deputy Assistant Attorneys General in the Criminal Division of the Department of Justice may authorize applications for wiretaps. 18 U.S.C. § 2516(1). Agent Bakr's reference to OEO and "Main Justice" simply reflects the agency's procedures for processing applications that are ultimately submitted to the appropriate officials at the Department of Justice. Of note, at least one commentator has indicated that this process not only meets Title III's stringent statutory requirement, it exceeds them by adding an additional level of review. *See* Derik T. Fettig, *When "Good Faith" Makes Good Sense: Applying Leon's Exception to the Exclusionary Rule to the Government's Reasonable Reliance on Title III wiretap Orders,* 49 HARV.J. ON LEGIS., 373, 397-98. Petitioner simply cannot established that he was in any way prejudiced by his counsel's failure to cross examine Agent Bakr on this point.

## C.    Ineffective Assistance With Regard to Stipulations

### 1.    Stipulation regarding Prior Felony Conviction

Petitioner avers in his affidavit that Attorney Benton "advised me to stipulate to all of the allegations and criminal history because if I am found guilty at trial, the judge will feel as though I wasted the courts [sic] time and sentence me more harshly." *Affidavit of Counsel's Conduct*, PageID #5566. The record reflects Petitioner's stipulation that, prior to April 21, 2008, he had been convicted of a felony offense. *Stipulation*, ECF 746. The government had previously identified Petitioner's six prior felony convictions in its notice to seek an enhanced sentence. *Information to Establish Prior Convictions*, ECF 743. Petitioner's stipulation to a prior felony conviction removed that issue from contention during the trial. Far from being ineffective, the stipulation reflects reasonable defense strategy, particularly since the record fails to indicate, as does Petitioner, any basis for challenging the government's reference to Petitioner's prior convictions.

> In *Old Chief v. United States*, 519 U.S. 172, 191, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997), the Supreme Court held that the Government was required to accept a defendant's stipulation of a prior felony in a firearm count rather than presenting proof about the nature of the prior felony conviction because "risk of unfair prejudice did substantially outweigh the discounted probative value of the record of conviction." Thus, trial counsel's stipulation was reasonable and beneficial to [Petitioner].

*Crutcher v. United States,* No. , 2011 WL 98831, at *9 (M.D. Tenn. Jan. 11, 2011). Petitioner's claim in this regard is without merit.

## 2. **Stipulation at Sentencing**

Petitioner also complains that Attorney Benton "advised me to stipulate to the elements presented in the government's 851 notice during my sentencing [sic] hearing." *Affidavit of Counsel's Conduct*, PageID #5566. Counsel challenged the use of Petitioner's prior convictions to enhance his sentence. *Sentencing Memorandum*, ECF 814. Although counsel did not challenge the validity of Petitioner's prior convictions, counsel argued that the use of those prior convictions to enhance Petitioner's sentence violated the Double Jeopardy Clause and was improper. Again, this was a reasonable defense strategy since the record reflects no basis upon which to challenge the validity of Petitioner's prior convictions.

Moreover, this issue was also raised – unsuccessfully - on direct appeal:

> Consecutive Sentences under § 924(c)
>
> [Attacking the consecutive sentences imposed for his § 924(c) convictions, defendant argues that § 924(c)'s "except clause" proscribed the imposition of the mandatory minimum consecutive sentences of 60 months and 300 months since he also received a mandatory minimum life sentence for the conspiracy conviction under 21 U.S.C. § 841(b)(1)(A).FN7 Acknowledging that this argument was not raised at sentencing, defendant argued for application of this court's subsequent holding to that effect in *Almany*, but, as the government points out*, Almany* has since been vacated in light of the Supreme Court's contrary interpretation in *Abbott v. United States*, ---U.S. ----, 131 S.Ct. 18, 178 L.Ed.2d 348 (2010). See *United States v. Almany*, 598 F.3d 238, 241–42 (6th Cir.), vacated --- U.S. ----, 131 S.Ct. 637, 178 L.Ed.2d 471 (2010). Following *Abbott*, this court has explained that the "except" language in § 924(c) "refers only to other provisions imposing longer mandatory sentences 'for the conduct § 924(c) proscribes, *i.e.*, possessing a

firearm in connection with a predicate crime.' " *United States v. Ham,* 628 F.3d 801, 812 (6th Cir.2011) (citation omitted). As a result, the defendant's mandatory minimum sentences under § 924(c) must run consecutively with any mandatory sentence for predicate crimes such as the convictions for possession with intent to distribute heroin. *United States v. Clark,* 634 F.3d 874, 877 (6th Cir. 2011).

FN7. Section 924(c)(1)(A) provides that: "Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law," a person who possesses a firearm during and in relation to a crime of violence or drug trafficking crime, or uses or carries a firearm in furtherance of such crime, shall, "in addition to the punishment provided for such crime of violence or drug trafficking crime" be sentenced to not less than five years, and in the case of a second or subsequent conviction, not less than 25 years. The except clause does not preclude the consecutive § 924(c) sentences in this case because they arise from separate substantive predicate drug offenses. See *United States v. Graham*, 275 F.3d 490, 519–20 (6th Cir. 2001).

B. Enhanced Sentence under § 841(b)(1)(A)

The penalty provisions applicable to defendant's conviction for conspiracy to distribute or possess with intent to distribute 1,000 grams or more of heroin provide that, if committed "after two or more prior convictions for a felony drug offense have become final," the defendant "shall be sentenced to a mandatory term of life imprisonment without release[.]" 21 U.S.C. § 841(b)(1)(A). In order to impose this statutory sentencing enhancement, the government must provide the required notice by filing an information pursuant to 21 U.S.C. § 851(a). *United States v. Mans*, 999 F.2d 966, 969 (6th Cir. 1993). The sufficiency of the filing of an information pursuant to § 851(a) is a question of law, which this court reviews *de novo. United States v. Pritchett*, 496 F.3d 537, 541 (6th Cir. 2007). Since neither claim was raised in the district court, however, our review is for plain error. *United States v. Gonzalez,* 512 F.3d 285, 288 (6th Cir. 2008).

The information filed prior to trial in this case identified six prior convictions, including three prior felony drug convictions. Defendant's response to that information did not contest the existence or accuracy of those prior convictions, but successfully argued that the convictions could not support the enhanced penalties under § 924(e). At sentencing, the government made a proffer of evidence establishing that defendant had three prior felony drug convictions required by § 841(b)(1)(A). Defendant then signed a written stipulation acknowledging the following three prior felony drug convictions in the Court of Common Pleas of Franklin County, Ohio: (1) Aggravated Trafficking, No. 82CR-07-2236, on or about May 19, 1983; (2) Preparation of Heroin for Sale and Possession of Cocaine, No. 00CR-0517, on or about August 13, 2001; and (3) Possession of Heroin and Having Weapons under Disability, No. 99R-2699, on or about August 13, 2001. Addressed directly by the district court, defendant himself agreed that the facts in the stipulation were true. After finding that defendant had two or more prior felony drug convictions, the district court imposed a mandatory minimum sentence of life imprisonment for the conspiracy offense.

First, defendant argues that the Information, as well as the stipulation at sentencing, inaccurately identified the date of conviction for Aggravated Trafficking as May 14, 1983, when that was the date of his guilty plea and the judgment was not entered until July 18, 1983. The information otherwise correctly identified the court, the case number, and the conviction. In examining the adequacy of the notice under § 851, "the proper inquiry is whether the government's information provided the defendant 'reasonable notice of [its] intent to rely on a particular conviction and a meaningful opportunity to be heard.' " *United States v. King*, 127 F.3d 483, 488–89 (6th Cir. 1997) (citation omitted). Defendant has not shown that the misidentification of the date of conviction deprived the defendant of reasonable notice or a meaningful opportunity to be heard. *Id*. at 489 (holding defendant had adequate notice when information listed offense and court despite error in date). Defendant cannot demonstrate plain error with respect to the § 851 notice of this conviction.

Second, defendant argues that it was improper for the other two felony drug convictions to be counted separately because he was arrested for these offenses on the same day and was sentenced for those convictions on the same day. *See United States v. Murphy*, 107 F.3d 1199, 1208–10 (6th Cir. 1997). Not only is this claim without merit, but any error would be harmless because the mandatory life sentence is triggered by two or more felony drug convictions.

This court has adopted a "separate criminal episodes" test for determining whether prior felony drug convictions are separate predicate convictions for purposes of enhancement under § 841(b)(1)(A). This test asks whether the convictions arise from "separate criminal episodes" that are "distinct in time." "An episode is an incident that is part of a series, but forms a separate unit within the whole. Although related to the entire course of events, an episode is a punctuated occurrence with a limited duration." *United States v. Hughes*, 924 F.2d 1354, 1361 (6th Cir.1991).

Although the records indicate that the sentences imposed in Case Nos. 00CR-0517 and 99R-2699 on August 13, 2001, were to run concurrently with each other, the separate indictments reflect that the drug convictions arose from separate criminal episodes. In Case No. 99R-2699, defendant was indicted in May 1999 on charges arising from the possession of heroin and cocaine on January 7, 1999, while in Case No. 00CR-0517, defendant was indicted in February 2000 on charges arising from the possession of heroin and cocaine on October 16, 1999. Defendant has not shown error, much less plain error, in counting the convictions in these two cases separately where the records reflect that the convictions arose from separate criminal episodes that are distinct in time. *See, e.g., United States v. Goins,* 53 Fed.Appx. 724, 729–30 (6th Cir.2002) (holding that two felony convictions for drug sales that took place six weeks apart to the same government informant arose from separate episodes even though he was convicted on both counts on the same day); *United States v. Jones*, 205 Fed.Appx. 327, 335–36 (6th Cir. 2006) (*per curiam*) (holding separate convictions for drug transactions occurring four or five days apart were properly counted as separate convictions).

## C. Constitutionality of Life Sentence

Finally, challenging the constitutionality of the mandatory life sentence, defendant argues (1) that the enhancement of his sentence based upon his prior convictions violated the Double Jeopardy Clause of the Fifth Amendment; and (2) that the mandatory life sentence is so disproportionate as to constitute cruel and unusual punishment in violation of the Eighth Amendment. Constitutional challenges to a sentence present questions of law that are reviewed *de novo*. *See United States v. Jones*, 569 F.3d 569, 573 (6th Cir. 2009). While the government argues that only the Eighth Amendment claim was raised in the district court, both claims fail even under a *de novo* review.

The Double Jeopardy Clause "protects against a second prosecution for the same offense after acquittal; against a second prosecution for the same offense after conviction; and against multiple punishments for the same offense." *United States v. Mack,* 938 F.2d 678, 679 (6th Cir. 991). This court has squarely rejected defendant's contention that the enhancement of a sentence under § 841(b) on the basis of prior felony drug convictions violates double jeopardy. *See Pruitt,* 156 F.3d at 645–46; *United States v. Flowal*, 163 F.3d 956, 963 (6th Cir. 1998); *United States v. Gonzalez*, 257 Fed.Appx. 932, 945–46 (6th Cir. 2007).

This court adheres to the "narrow proportionality principle" for evaluating Eighth Amendment claims articulated in *Harmelin v. Michigan*, 501 U.S. 957, 996–97, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring). *See United States v. Graham*, 622 F.3d 445, 452 (6th Cir. 2010), *cert. denied*, ––– U.S. ––––, 131 S.Ct. 2962, 180 L.Ed.2d 251 (2011); *United States v. Hill,* 30 F.3d 48, 50–51 (6th Cir. 1994). A plurality in *Harmelin* rejected the claim that the Eighth Amendment required strict proportionality and concluded that it prohibited only "extreme sentences that are 'grossly disproportionate' to the crime." 501 U.S. at 1001, 111 S.Ct. 2680. Applying this principle, the plurality in *Harmelin* rejected the defendant's assertion that his sentence of life imprisonment without parole was grossly disproportionate to the crime since he was a first-time felony offender in possession

> of 650 grams of cocaine. *Id.* Likewise, this court
> has held that imposition of a life sentence
> without parole for a third felony drug conviction
> is not "grossly disproportionate" to the crime.
> *See Hill,* 30 F.3d at 50-51; *see also Jones*, 569
> F.3d at 573-74; *United States v. Wimbley,* 553
> F.3d 455, 463 (6th Cir. 2009); *Caver,* 470 F.3d at
> 247. Defendant's assertion of this claim fares no
> better. To the extent that defendant asserts a
> lack of proportionality between himself and
> others convicted of similar offenses, this court
> held that comparative proportionality is not
> mandated by the Constitution. *See United States
> v. Layne*, 324 F.3d 464, 474 (6th Cir. 2003).

*United States v. Kelsor,* 655 F.3d at 698-700.

Attorney Benton raised additional issues regarding Petitioner's sentence. He objected to the quantity of heroin attributed to Petitioner for purposes of sentencing. *Transcript of Sentencing Hearing*, ECF 838, PageID #4755; he argued that the enhancement of Petitioner's convictions violated the Sixth Amendment; *Id. at* PageID #4761; and he argued that the Court had improperly classified Petitioner as a career offender, *Id.* at PageID #4770. He argued for a downward departure in the recommended sentence under the United States Sentencing Guidelines on the basis that the criminal history score overstated the actual seriousness of Petitioner's criminal history. *Id.* at PageID #4776. The fact that the Court overruled these objections is not evidence of the ineffective assistance of counsel.

## III. Discriminatory Prosecution Claim

In claim four, Petitioner alleges that he was denied a fair trial because the government made racially prejudicial statements and exhibited bias in its prosecution of him. *Motion to Vacate*, PageID #5555. Petitioner offers no factual support whatsoever for these

conclusory allegations and the Court finds nothing in the record to support Petitioner's claim of prosecutorial misconduct. The Court concludes that Petitioner's claim of prosecutorial misconduct is without merit.

**WHEREUPON**, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

## IV. Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review *the Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v.*

*Arn*, 474 U.S. 140, (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

*s/ Norah McCann King*
Norah McCann King
United States Magistrate Judge

June 12, 2014